IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ROBIN M. DUNNIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:20-cv-975-SMD |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

## **OPINION & ORDER**

In October 2018, Plaintiff Robin M. Dunnivan ("Dunnivan") filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, and for Supplemental Security Income ("SSI") under Title XVI. She alleged disability beginning September 19, 2018. Dunnivan's application was denied at the initial administrative level, and she received an unfavorable decision after a hearing before an Administrative Law Judge ("ALJ"). Dunnivan appealed the ALJ's decision to the Social Security Appeals Council. The Appeals Council denied review and concluded that there were no reasons that provide a basis for changing the ALJ's decision. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Dunnivan now appeals that decision under 42 U.S.C. § 405(g).[1] For the reasons that

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. *Pl.'s Consent* (Doc. 11); *Def.'s Consent* (Doc. 12).

follow, the undersigned affirms the Commissioner's decision.

## I. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite their impairments— based on the relevant evidence within the record. *Id.* The RFC may contain

---

[2] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II. STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied and may reverse if they were not. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)); *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991).[5] "Substantial evidence is more than a scintilla, but less than a preponderance. It is such

---

[3] The Medical Vocational Guidelines, also known as grids, allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

[5] A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

3

relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

### III.   ADMINISTRATIVE PROCEEDINGS

Dunnivan, who was thirty-five years old at the time of the ALJ's decision, has a ninth grade education and past work experience in a composite position that consisted of being a material handler, a production laborer, and sewing. Tr. 25, 38. She alleged disability due to right hip replacement, right lower back problems, right knee problems, left foot problems, bilateral leg problems, and nerve damage. Tr. 21, 187.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Plaintiff's disability determination. At step one, the ALJ found that Dunnivan has not engaged in substantial gainful activity since her alleged onset date. Tr. 17. At step two, the ALJ found that Dunnivan suffers from the following severe impairments: "obesity; osteoarthritis, congenital hip dysplasia/juvenile osteochondritis and legg-calves-perthes disease, status-post right hip replacement with leg length discrepancy; major depressive disorder; and valgus deformity of the right knee[.]" Tr. 17-18. At step three, the ALJ found that Dunnivan "does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 18.

The ALJ proceeded to determine Dunnivan's RFC, articulating it as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.197(a) except that she is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, and climbing on ramps and stairs, but she must avoid occupations that require climbing on ladders, ropes, or scaffolds, and kneeling, crouching, or crawling. She must avoid occupations that require pushing or pulling with the lower extremities to include the operation of pedals. She must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, vibration, or extreme dampness and humidity. She is limited to occupations which do not require exposure to hazards such as dangerous machinery and unprotected heights. She is limited to occupations requiring no more than simple, routine tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions and in general, relatively few workplace changes.

Tr. 20-21. At step four, the ALJ utilized the testimony of a VE and determined that Dunnivan is "unable to perform any past relevant work[.]" Tr. 25. At step five, the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 25. These jobs include: "ticket counter," "charge account clerk," and "order clerk[.]" Tr. 26. Accordingly, the ALJ determined that Dunnivan had not been under a disability from September 19, 2018, through the date of her decision. Tr. 26.

## IV. ANALYSIS

The three issues before the Court are (1) whether the ALJ properly applied the three-part pain standard to Dunnivan's subjective pain testimony and other symptoms, (2) whether the ALJ erred in not including limitations arising from pain and other symptoms in her hypotheticals to the VE, and (3) whether the ALJ's RFC determination is supported by substantial evidence. Pl.'s Br. (Doc. 16) pp. 1, 3, 10. For the following reasons, the undersigned affirms the ALJ's decision.

### A. The ALJ properly applied the three-part pain standard to Dunnivan's subjective pain testimony.

The Eleventh Circuit has held that pain alone can render a person disabled even where its existence is not supported by substantial evidence. *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. 2021) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). Thus, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Id.* (internal quotations omitted) (citing *Foote*, 67 F.3d at 1561). "A claimant attempting to establish disability through [her] own testimony of subjective symptoms must show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* (internal quotations omitted) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. § 404.1529).

If the ALJ discredits a claimant's subjective testimony, she must articulate explicit and adequate reasons for doing so. *Id.* (citing *Wilson*, 284 F.3d at 1225). If the ALJ fails to articulate her reasons for discrediting subjective testimony, the court is required, as a matter of law, to accept the testimony as true. *Id.* (citing *Wilson*, 284 F.3d at 1225). The court will not disturb a clearly articulated finding about subjective complaints that is supported by substantial evidence. *Id.* (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).

Dunnivan argues that, while the ALJ properly outlined the pain standard in her opinion, her RFC finding indicates that she did not properly apply it. Pl.'s Br. (Doc. 16) pp. 7-8. Dunnivan specifically asserts that the ALJ "recite[d] evidence from [ ] [her] record in a manner that emphasized elements not relevant to her pain complaints while minimizing evidence of [ ] [her] pain." *Id.* at 8 (citing Tr. 21-25).

"If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)). "In doing so the ALJ must consider all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors." *Id.* (citing 20 C.F.R. § 404.1529(c)(1)-(2)). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain and other symptoms; (3) any precipitating

7

and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to her pain or symptoms. *Id.* at 786-87 (quotations omitted) (citing 20 C.F.R. § 404.1529(c)(4)). "The ALJ must then examine the claimant's statements regarding her symptoms in relation to all other evidence and consider whether there are any inconsistencies or conflicts between those statements and the record." *Id.* at 787 (citing 20 C.F.R. § 404.1529(c)(4)). While the ALJ must articulate explicit and adequate reasons for discrediting subjective testimony, she "does not need to cite particular phrases or formulations[.]" *Jackson ex rel D.T.J. v. Colvin*, 2014 WL 3955218, at *3 (M.D. Ala. Aug. 13, 2014) (internal quotations omitted) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). However, the reasoning must be extensive enough to show the court that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210.

Here, the ALJ correctly applied the three-part pain standard and considered Dunnivan's medical condition as a whole. First, the ALJ adequately summarized the pain standard and cited the correct regulation laying out the standard. Tr. 21. In her opinion, the ALJ stated she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529[.]" Tr. 21; *see also Wilson*, 284 F.3d at 1226 (explaining that, based on the ALJ's reasoning and citation to 20 C.F.R. §

8

404.1529, which contains the same language as the three-part pain standard, it was clear that he was applying the standard). The ALJ then explained that "[i]n considering the claimant's symptoms, [she] must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." Tr. 21. She further explained that "once an underlying physical or mental impairment(s) . . . has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." Tr. 21. She also explained that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." Tr. 21. Because the ALJ cited the correct regulation and correctly summarized the pain standard, it is clear she applied the correct three-part pain standard.

Next, the ALJ's reasoning and explanation show that she correctly applied the pain standard, that she considered Dunnivan's medical condition as a whole, and adequately considered the record evidence. The ALJ initially recognizes that Dunnivan complains of "constant pain in her right hip that has worsened[.]" Tr. 21. The ALJ then states that "[a]fter careful consideration of the evidence, [she] finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]"

but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 21.

The ALJ then points to various pieces of evidence in the record: a longstanding history of right hip issues; a "mushroom type" deformity of the head and shallowness in the acetabulum; needing to use a cane for balance; reduced range of motion in the right hip; gait with a right leg limp; ongoing pain management treatment; leg length discrepancy; hip pain; and abnormal posture of the right lower extremity. Tr. 22. The ALJ also discussed: Dunnivan's right hip arthroplasty with follow-up x-ray imaging that consistently noted intact and proper placement of hardware; 5/5 muscle strength in all major muscle groups, normal muscle tone, normal reflexes, and the ability to squat and rise while holding on to the examination table; intact sensation, normal muscle tone and bulk, and the ability to stand without difficulty; X-ray imaging in March 2019 that revealed right hip hardware without evidence of abnormal motion, unremarkable soft tissue, and no periprosthetic facture; her treating physician recommending conservative treatment; and not being required to use the cane at all times, including at the hearing. Tr. 22-23. After giving this account of record medical evidence, the ALJ concluded by stating "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they do not support greater limitations than those accounted for herein. In addition to the claimant's limited, routine, and conservative course of treatment, the objective evidence of limitation does not support the degree of limitations reported by the claimant." Tr. 23.

Based on the ALJ's listing of medical evidence coupled with her explanation of Dunnivan's statements regarding the limiting effects of her symptoms, the undersigned finds that her determination is supported by substantial evidence. The ALJ's listing of medical evidence that was both favorable and unfavorable to her determination disproves Dunnivan's assertion that the ALJ "recite[d] evidence from [ ] Dunnivan's record in a manner that emphasized elements not relevant to her pain complaints while minimizing evidence of . . . pain." *See* Pl.'s Br. (Doc. 16) p. 8.

Additionally, Dunnivan's argument that the ALJ improperly considered her pain treatment regimen also fails. An ALJ is free to review treatment plans when assessing subjective complaints of pain. *Goodwill v. Saul*, 2020 WL 1324082, at *7 (N.D. Ala. Mar. 20, 2020); *see also Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016) (holding the ALJ properly considered conservative treatment regimen to undermine claimant's testimony). Here, the ALJ acknowledged the conservative treatment by Dunnivan's treating physician.[6] Tr. 22. The ALJ also noted Dunnivan's generally consistent pain treatment through medication and injections.[7] Tr. 22. This indicates that Dunnivan's pain was controlled by the treatment received. Furthermore, just because

---

[6] The treatment recommended was a shoe insert for her left leg. Tr. 340. Her treating physician explicitly stated he did not recommend procedure to fix the leg length discrepancy. Tr. 340.

[7] While pain medication and injections are generally not considered conservative treatment (*see Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (stating that a claimant's use of pain medication is not consistent with a finding that treatment was conservative); *see also Rebelo v. Acting Comm'r Soc. Sec.*, 2017 WL 4277541, at *8 (M.D. Fla. Sept. 27, 2017) (categorizing injections as a more invasive measure of treatment)), the record indicates that the dosages and amounts of the medications prescribed to Dunnivan have remained effectively unchanged. Tr. 275-76, 360-61.

Dunnivan is being prescribed pain medication and steroid injections does not mean her pain is disabling.

Finally, to the extent the ALJ's failure to discuss Dunnivan's pain management regimen more thoroughly was error, because the ALJ relied on other substantial evidence to discredit Dunnivan's testimony, that error is harmless. *See Sarli v. Berryhill*, 817 F. App'x 916, 917 (11th Cir. 2020) ("A harmless error—that is one that does not affect the ALJ's ultimate decision—does not constitute a ground for reversal.") Therefore, the ALJ's determination is supported by substantial evidence.

## B. The ALJ did not err by not including pain symptoms in her hypothetical to the VE.

Dunnivan also argues that, by failing to include limitations that account for pain and its effects in her hypotheticals to the VE, the ALJ made a flawed RFC determination by relying on the VE's testimony. Pl.'s Br. (Doc. 16) p. 10. For a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all the claimant's impairments. *Yates v. Comm'r of Soc. Sec.*, 706 F. App'x 588, 593 (11th Cir. 2017). The hypothetical need only include the claimant's impairments, not each symptom of the claimant. *Id.* (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007)). The ALJ is not required to include impairments in the hypothetical that the ALJ has properly found to be unsupported. *Hambry v. Soc. Sec. Admin. Comm'r*, 480 F. App'x 548, 550 (11th Cir. 2012).

Here, the ALJ properly found that Dunnivan's testimony regarding her pain and subjective symptoms was unsupported. *See*, Sec. IV(A), *supra*. As such, the ALJ was not required to include those impairments in the hypothetical to the VE.

**C. The ALJ's RFC determination is supported by substantial evidence.**

An RFC determination is within the authority of the ALJ and the assessment should be based on all relevant evidence of a claimant's ability to work despite her impairments. *Beech v. Apfel*, 100 F. Supp. 1323, 1330 (S.D. Ala. 2000) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). The ALJ need not discuss every piece of evidence so long as the ALJ considers the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ must, however, provide a sufficient rationale to link the evidence to the RFC determination. *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

Here, the ALJ's RFC determination is supported by substantial evidence. Including the evidence listed above (*see* Sec. IV(A), *supra*), the ALJ also considered medical opinions and prior administrative medical findings when determining Dunnivan's RFC. She indicated the persuasiveness of these opinions and their consistency with the record evidence. Based on her evaluation of the evidence, the undersigned finds that the ALJ considered Dunnivan's medical condition as a whole and provided a sufficient rationale

linking the evidence to her RFC determination.[8] Tr. 24-25. As such, the undersigned concludes that the ALJ's RFC determination is supported by substantial evidence.

## V. CONCLUSION

Based on the foregoing reasons, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 2nd day of May, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE

---

[8] The ALJ stated that Dunnivan's "allegations are not entirely consistent with the medical and other evidence because a review of the entire record fails to reasonably support the nature, intensity, frequency, or duration or the limitations alleged by the claimant." Tr. 24-25.